USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 93-1502 UNITED STATES OF AMERICA, Appellee, v. JOSE VILLANUEVA, Defendant, Appellant. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Walter Jay Skinner, U.S. District Judge] ___________________ ____________________ Before Torruella, Circuit Judge, _____________ Aldrich, Senior Circuit Judge, ____________________ and Cyr, Circuit Judge. _____________ ____________________ Edward D. Entine with whom Edward A. Gottlieb and Coyne & __________________ ____________________ ________ Gottlieb were on brief for appellant. ________ Timothy Q. Feeley, Assistant United States Attorney, with whom A. __________________ __ John Pappalardo, United States Attorney, was on brief for appellee. _______________ ____________________ February 3, 1994 ____________________ ALDRICH, Senior Circuit Judge. Defendant Jose ______________________ Villanueva pleaded guilty to possessing a firearm after having been convicted of a felony, 18 U.S.C. 922(g)(1), but subject to the right to appeal the propriety of the Terry _____ type stop and search that had discovered the gun.1 Fed. R. Crim. P. 11(a)(2). In denying the motion to suppress, the district court stated that it believed the testimony of the government witness, Anderson, and that it took into account the nature of the area and the history of volatile conduct in that particular station and concluded that the temporary stop and pat search was reasonable under all of the circumstances. We affirm. Anderson testified that he and another uniformed officer of the Massachusetts Bay Transportation Authority (MBTA) were manning a directed patrol of the Roxbury Crossing MBTA Station. According to him, "Directed patrol is the time of a day that is targeted for high visibility because of particular instances that have happened in a certain area." The officers placed themselves inside the turnstiles on the upper level, near the head of the stairs and escalator from which they could look down and see almost all that was below -- a single platform flanked by an inboard and an outboard line. Anderson testified that several hundred high school students come through there a day, and at the time in ____________________ 1. Terry v. Ohio, 392 U.S. 1 (1968). _____ ____ -2- question a couple of hundred were boarding an outbound train. "We observed two young males acting in a disorderly manner. . . . [T]hey were banging on the train windows and giving the other students the middle finger and they were becoming quite loud . . . pounding against the windows . . . There were obscenities." Defendant wore a hooded sweatshirt just over the belt and a goosedown type of coat hanging past his knees that could conceal a weapon. We had "decided to talk to the two gentlemen to let them know that their behavior was extremely disorderly and we didn't expect that from them." "We intended to talk with them and tell them that that type of behavior was not appropriate; don't do it again; leave the station." When defendant and friend reached the top of the escalator Anderson told defendant -- whom they had assigned to him -- to step aside; that he wanted to speak to him, to check him, at which point defendant looked "extremely nervous." When Anderson patted his outside clothing around the waist, immediately feeling a gun, defendant sought to flee, but Anderson restrained him. In complaining that Anderson's conduct invaded his Fourth Amendment rights to be free of unreasonable searches and seizures defendant stresses the following points. His -3- prior conduct had been, at most, a misdemeanor.2 He had left the site, and had discontinued the conduct. He bore no outward appearance of being armed. The officer did not make, or propose to make, an arrest. The pat-down occurred even before the officer asked any questions. Most of these matters are easily answered. If there was a shown need for a safety pat-down, the sooner the better. Equally, we see no relevance in the length of the state sentence defendant had exposed himself to. While defendant's clothing was in current style, and so could not affirmatively be held against him, Ybarra v. Illinois, 444 ______ ________ U.S. 85, 93 (1979), its capacity for concealment was not irrelevant. Defendant's other points require more consideration. This case, of course, involves two events: the stop, and the search (a pat-down of even the slightest character being a search). Terry at 16. The two must be _____ construed together. [I]n determining whether the seizure and search were "unreasonable" our inquiry is a dual one -- whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place. Terry at 20. _____ ____________________ 2. This it clearly was. Mass. G.L. c. 272 53 (1990) (". . . disorderly persons, disturbers of the peace . . ."). -4- This test should be applied in both directions. An officer might wish to stop a pedestrian from crossing against the light. Should he not refrain from doing so, for lack of relative importance, if the pedestrian's general appearance made him fear that his safety might be involved if he accosted him? Here the need of accosting justified the stop; even if a search would be in order. It was highly desirable, if not the duty, of the patrol officers to make their presence felt and warn against future misbehavior even though doing so, in the officers' opinion, would call for a safety search. Our sole question is the correctness of that opinion: "[W]hether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." Terry at 27. _____ The district court spoke, correctly, of the history of the area, confirmed by the very fact that the MBTA felt it advisable to provide a special patrol. The court doubtless noted the provocative nature of defendant's conduct. With a couple of hundred students present there might well be many who would be offended. Was he "emboldened" by having a weapon? Cf. United States v. Wilkinson, 926 F.2d 22, 25 (1st __ _____________ _________ Cir.), cert. denied, 111 S. Ct. 2813 (1991) (concealed weapon ____________ may embolden). For the words "reasonably" and "circumstances" an important consideration is the calendar -- the times. With -5- the plethora of gun carrying, particularly by the young, we must have sympathy, to an extent, with police officers' apprehensions. And, as there may be degrees of apprehension, so may there be degrees of invasion upon privacy. We will not overrule the district court in this case, but do note the question extremely close. Also, we remind police that the character of the neighborhood does not provide automatic permission, Brown v. Texas, 443 U.S. 47 (1979); every case _____ _____ must be considered on its own reasons for suspicion of danger. United States v. Stanley, 915 F.2d 54 (1st Cir. ______________ _______ 1990). A word as to defendant's contention that, on the basis of Anderson's testimony, he had two objectives. In addition to lecturing defendant to keep away and not repeat his offense, for which he felt the need of protecting himself and others, Anderson intended to pat defendant down based simply on his conduct in disturbing the peace. The fact, however, that he had this additional purpose did not, even if improper, destroy the validity of the one that the court relied on. We need not, accordingly, evaluate it. At the same time, we cannot resist remarking that it comes with ill grace from someone engaged in affronting his fellow citizens wholesale, as was this one, to claim that a pat-down of his outer clothing was a "serious intrusion upon the sanctity of [his] person, which may inflict great indignity." Terry at _____ -6- 17. Cf. Curley v. Curtis Pub. Co., 48 F. Supp. 27 (D. Mass. __ ______ _______________ 1942) (plaintiff claiming emotional suffering from defamation can be shown accustomed to abuse others). Affirmed. ________ -7-