**UNITED STATES of America, Appellee,**

v.

**Juan SEPULVEDA, Defendant, Appellant.**

**UNITED STATES of America, Appellee,**

v.

**Juan VELASQUEZ, Defendant, Appellant.**

Nos. 95–2255, 95–2256.

United States Court of Appeals, First Circuit.

Heard Sept. 6, 1996.

Decided Dec. 30, 1996.

William T. Murphy, Providence, RI by Appointment of the Court, for appellant Juan Sepulveda.

Stephen J. Weymouth, Boston, MA by Appointment of the Court, for appellant Juan Velasquez.

Sheldon Whitehouse, United States Attorney, with whom Stephanie S. Browne, Assistant United States Attorney, was on brief for the United States.

Before BOUDIN, Circuit Judge, BOWNES, Senior Circuit Judge, and LYNCH, Circuit Judge.

BOUDIN, Circuit Judge.

On February 14, 1995, acting on an informant's tip that two Hispanic males were selling crack through a side window, police detectives in Providence, Rhode Island staked out the designated first-floor apartment. The officers saw an unusual number of visitors going to and from the side of the building, remaining only briefly. After watching for an hour, an undercover detective approached one side window, was directed to a different side window partly covered with plywood and purchased two "rocks" of cocaine base ("crack"), paying with two marked $20 bills.

The police then forcibly entered the apartment and found four men inside, including appellants Juan Sepulveda and Juan Velasquez. The apartment was unfurnished, with no signs of personal drug use by the occupants. The undercover detective identified Velasquez as the seller. Sepulveda's pants pockets contained plastic bags of powder cocaine and of crack, and a bundle of cash (including the two marked $20 bills from the earlier purchase). The police also found a sawed-off rifle which proved to be unregistered.

Both Velasquez and Sepulveda were charged with a panoply of drug and weapons offenses. The case proceeded to trial in June 1995 under a redacted five-count indictment: count I charged the defendants with conspiracy to distribute, and to possess with intent to distribute crack. 21 U.S.C. § 841(a)(1). Counts II and III, respectively, alleged distribution of crack and possession of crack with intent to distribute. *Id.* Count IV charged the use of a firearm during a drug trafficking crime, 18 U.S.C. § 924(c)(1), and count V alleged possession of an unregistered sawed-off rifle. 26 U.S.C. §§ 5841, 5861(d), 5871. After a four-day trial, the jury found both defendants guilty on all five counts.

In October 1995, the district judge sentenced Sepulveda to 70 months' imprisonment on counts I, II, III, and V, and Velasquez to 78 months on those same counts. Both defendants were also given a mandatory consecutive 10–year sentence under count IV; but the government and the defendants now stipulate that the conviction and sentence under count IV have been undermined by *Bailey v. United States,* —— U.S. ——, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995). The appeals are directed to the remaining four counts.

## I.

We begin with the more substantial of the challenges to the convictions. First, Sepulveda asserts that the search of his person by police officers immediately prior to his arrest was unlawful because it was executed without a warrant or probable cause and exceeded the lawful scope of a protective frisk for weapons. Accordingly, Sepulveda says that the drugs and cash discovered in his pockets should have been suppressed, and that the remaining evidence is not enough to support his conviction. The government argues that Sepulveda waived this issue by not raising it in the district court.

At a suppression hearing on June 16, 1995, the district court ruled that the apartment search was based on probable cause and that exigent circumstances—namely, the risk that contraband might be destroyed—justified entry without awaiting a warrant. Whether Sepulveda separately disputed the search of his person, and whether the district court intended its reasoning to cover this search as well, is not entirely clear. Since the facts are undisputed and we review probable cause decisions *de novo, Ornelas v. United States,* —— U.S. ——, ——, 116 S.Ct. 1657, 1663, 134 L.Ed.2d 911 (1996), the easiest course is for us to decide ourselves whether the search of Sepulveda himself was valid.

The police had ample cause to arrest Velasquez, but probable cause must exist for each person arrested, and "mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person." *Ybarra v. Illinois,* 444 U.S. 85, 91, 100 S.Ct. 338, 342, 62 L.Ed.2d 238 (1979). The government does not argue that a mere protective frisk of Sepulveda would have produced the money as well as the drugs, so the question is whether the circumstances provided proba-

ble cause to arrest—and therefore to search—Sepulveda. *United States v. Martinez–Molina,* 64 F.3d 719, 726 (1st Cir.1995).

The apartment in this case was unfurnished and partly boarded up. There is no indication that it was used for any purpose other than distribution of drugs. The numerous walk-up sales the police had observed confirmed that the apartment was being used for drug distribution and strongly suggested that everyone in the apartment knew of this activity. *See Martinez–Molina,* 64 F.3d at 729. It is only a short step to suppose that those present in the otherwise vacant apartment were probably drug dealers or purchasers.

The D.C. Circuit encountered similar facts in *United States v. Holder,* 990 F.2d 1327, 1329 (D.C.Cir.1993). After entering an apartment and finding evidence of drug distribution, the police arrested the individuals found inside. The court upheld the arrest of a defendant who claimed to be a bystander, saying that the open nature of the drug sale activity in the apartment gave rise to a reasonable inference that each occupant was involved in the drug trade—either as an accomplice in the drug sales or as a customer. *Id.* at 1329.

▆ To be sure, Sepulveda might have been an innocent visitor. But probable cause requires only that the police have "reasonable grounds to believe" that Sepulveda had committed the crime. *See United States v. Melvin,* 596 F.2d 492, 495 (1st Cir.1979). The facts of this case persuade us that there was ample reason for the police to think that Sepulveda was engaged in a felony. Given probable cause prior to the search, it is irrelevant that the formal arrest may have followed the search. *Rawlings v. Kentucky,* 448 U.S. 98, 111 & n. 6, 100 S.Ct. 2556, 2564 & n. 6, 65 L.Ed.2d 633 (1980).

▆ Second, Velasquez argues that the district court erred in the jury instructions by failing to tell the jury, according to his brief on appeal, "that it could not base a conviction of possession with intent to distribute cocaine base under count III on the same conduct that formed the basis for the distribution count (Count II)." The govern-

ment says (correctly) that Velasquez did little to explain his "concern" to the district court, making no request for any specific curative language. The objection was as follows.

I have a concern as it deals with the charge of possession with intent to sell—distribute. The Court knows, based on the evidence that it is alleged that there was a quantity of contraband allegedly in Mr. Sepulveda's pocket. I am concerned just based on the charge as it pertains to the definition that the Court instructed, as it pertains to the possession with intent to distribute, that the jury may in fact confuse that with the delivery. In other words, your Honor, I'm concerned that by virtue of the fact that we have a delivery charge and we have a possession with intent to distribute charge, I'm concerned that the jury may confuse them or think that they are in fact one and the same.

▆ A request for specific curative language may sometimes be needed to convey the substance of a requested addition or correction to the charge, and the absence of a specific request may prove fatal. *E.g., Parker v. Nashua,* 76 F.3d 9, 12 (1st Cir.1996). Still, one can imagine cases where some other formula might, in context, convey all of the needed information (*e.g.,* "I object to the definition of 'possession' because....). Here, based on the district judge's response, we think it is unclear that the district judge understood the objection to be the "same conduct" claim that Velasquez is now pressing on appeal.

▆▆ In any event, to the extent we understand the objection now, it appears to us to be ill-founded. Explaining why requires some background. Under *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), a defendant can be convicted of two differently defined offenses, based on the same core of facts, so long as each offense requires an element that the other does not. *Id.* at 304, 52 S.Ct. at 182. The offense of distribution obviously does require an element not required for the crime of possession with intent, namely, the act of distribution.

It is possible—albeit unusual—to be guilty of distribution of a drug without also possessing it with intent to distribute. Someone who participates in a drug transfer—*e.g.*, as a broker or armed guard—can be liable for distribution without ever possessing the drugs. *See, e.g., United States v. Brunty,* 701 F.2d 1375, 1381 & n. 16 (11th Cir.1983). While "possession" is certainly helpful in proving distribution, it is technically not a necessary element. *United States v. Tejada,* 886 F.2d 483, 490 (1st Cir.1989). *Compare* 2 Sand *et al., Modern Federal Jury Instructions,* 56–24 to 56–26, 56–4 (1992).

But satisfying *Blockburger* has not wholly satisfied the circuit courts. Where the evidence shows only that a defendant handed over a packet of drugs, some courts have balked at the idea that Congress intended to allow a conviction both for possession with intent and for distribution. *E.g., United States v. Meredith,* 824 F.2d 1418, 1426 (4th Cir.1987). Other circuits have said that conviction on both counts is permitted, but that a defendant may only be sentenced on one. *See, e.g., United States v. Palafox,* 764 F.2d 558, 562 (9th Cir.1985).

By contrast, this court, following the Fifth Circuit, *United States v. Zabaneh,* 837 F.2d 1249, 1257 (5th Cir.1988), has said that "the offenses merge only where the distribution itself is the sole evidence of possession, or where possession is shown to exist only at the moment of distribution," *United States v. Rodriguez–Cardona,* 924 F.2d 1148, 1159 (1st Cir.1991), and we have also made clear that a defendant could be convicted of both offenses, with respect to the *same* drug, so long as there was proof that he possessed the drug (with intent to distribute) at some point earlier than the distribution itself. *Tejada,* 886 F.2d at 490.

It is doubtful that the game (reflected in these various distinctions drawn by the circuits) is worth the candle where both offenses are prosecuted at the same time. In most configurations, the guidelines will assure that the sentence is the same for one or both, save for the $50 mandatory assessment. U.S.S.G. §§ 3D1.1, 3D1.3 (Nov.1994). And so far as we can tell, only the $50 assessment is at issue here. But based on this stake alone, *Rutledge v. United States,* —— U.S. ——, ——, 116 S.Ct. 1241, 1247, 134 L.Ed.2d 419 (1996), prevents us from treating the issue as moot.

In any event, the disagreement between the circuits is irrelevant here, as is the narrower concern that prompted this court in *Tejada* and *Rodriguez–Cardona.* Velasquez was plainly shown to have distributed two rocks that he sold through the window to the detective. It is scarcely less clear that the jury regarded Velasquez as constructively possessing with intent to distribute quite separate packages of crack that Sepulveda had in his pocket. Thus, Velasquez was guilty of both crimes based upon different drugs.

The constructive possession finding is inference but almost inescapable. By convicting Sepulveda of distribution and finding both defendants liable of possessing the same gun, the jury made clear its view that both men were partners in the same criminal enterprise, a view borne out not only by circumstances but by Sepulveda's possession of the marked bills handed to Velasquez through the window. On this basis, it follows that Velasquez was also liable on the possession charge for the crack carried by Sepulveda.

## II.

Velasquez challenges his sentence on several grounds. The most important ground concerns the treatment of the cash found in Sepulveda's pockets; the district court treated the entire amount as proceeds from the sale of crack. Velasquez argues that the cash should not have been converted into an equivalent quantity of drugs at all and, if converted, should have been treated as proceeds of powder cocaine.

When the police searched Sepulveda, they discovered in his pockets $335 in cash, five plastic bags of crack and three plastic bags of powder cocaine. The cash included the two marked $20 bills that the detective had exchanged for two "rocks" of crack, leaving $295. The probation officer said that this remaining amount likely represented the proceeds of prior crack sales but, to give "the benefit of the doubt" to the defendants, rec-

ommended that the cash be converted into an equivalent of powder cocaine rather than crack.

The government objected vigorously. It argued that the convictions were for crack, that powder cocaine counts had been dropped (because the amount of powder did not warrant an inference of possession with intent), and that "all of the facts" pointed to crack distribution and none to powder cocaine. The probation officer replied that there was "perhaps[ ] a greater likelihood that the seized money represented the proceeds from prior sales of crack cocaine"; but the presence of three bags of powder persuaded the probation officer to stand by her earlier recommendation.

At the sentencing, the government pressed its objection, arguing that the $295 should be translated into crack, and the district court sided with the government. As crack is punished much more seriously than cocaine powder, *see United States v. Armstrong*, — U.S. —, —, 116 S.Ct. 1480, 1492, 134 L.Ed.2d 687 (1996) (Stevens, J., dissenting), the effect of the court's ruling (based on calculations that we need not describe because they are not disputed) was to increase the base offense level on the drug counts from 18 to 26. The district court then sentenced Velasquez to the minimum permitted by the guideline range for level 26 and his criminal history category of III, namely, 78 months.

There is nothing to Velasquez' primary objection in the district court, renewed on appeal, that the $295 should not be converted into drugs at all. A reasonable factfinder could conclude that it was more likely than not that Sepulveda and Velasquez were partners in a drug operation, Sepulveda holding the drugs and money and Velasquez completing the transactions at the side window. The co-mingling of the $40 in marked bills, and the lack of any other obvious source for the $295, made it reasonable to attribute the money to drug dealing properly included in the sentence. *See United States v. Gerante*, 891 F.2d 364, 368–69 (1st Cir.1989).

■ The more difficult question is whether the $295 should all be treated as proceeds of crack transactions or should be treated as powder, which Velasquez now urges as a fall-back position. The government says that Velasquez did not urge this alternative in the district court where, needless to say, his main argument was against treating the money as drug proceeds at all. But the alternative of treating the money as powder sales was presented by the presentence report and squarely rejected by the district judge in favor of treating the money as proceeds from crack.

In arguing for the probation officer's solution, Velasquez invokes our own admonition that courts must "err on the side of caution" in choosing among a number of plausible estimates of drug quantity. *United States v. Jackson*, 3 F.3d 506, 510 (1st Cir.1993); *United States v. Sklar*, 920 F.2d 107, 113 (1st Cir.1990). But this "caution" has a more precise office that is best understood by quoting directly from the opinion from which *Jackson* and *Sklar* borrowed the quoted language:

> If the exact amount cannot be determined, an estimate will suffice, but here also a preponderance of the evidence must support the estimate. Thus when choosing between a number of plausible estimates of drug quantity, *none of which is more likely than not the correct quantity*, a court must err on the side of caution.

*United States v. Walton*, 908 F.2d 1289, 1302 (6th Cir.1990) (emphasis added).

*Walton*'s caution would apply if (for example) the district court had found that the $295 might represent sales of crack or, to an equal likelihood, might represent sales of both crack and powder. But here the district court found that the money all represented crack sales. The court was obviously making a submerged judgment about probabilities (only the defendants know for sure); but it plainly thought that the finding it made was more likely than not to be true.

■ The standard of review on this issue is "clear error." *Gerante*, 891 F.2d at 368. Based on the facts already recited, we think there is no way to describe the district court's determination as irrational, highly speculative, or without a basis in the evidence. The money was found in the hands of

persons who had been identified in advance as crack dealers, had crack in their possession and had just completed a sale to the police of crack. There was no direct evidence of powder sales at all.

The district court could certainly have taken a different view of the matter. The defendants did have three bags of powder cocaine, suggesting that they might be in both lines of business. And, while the government pointed to the smallness of the amount of powder, conflicting inferences of this kind are matters to be weighed by the trier of fact. But that is precisely the point: it was for the district court to make these judgments and absent a clear mistake, we have no warrant to intervene.

## III.

The defendants make several other claims that require no detailed discussion. Velasquez says that the evidence was inadequate to support convictions on any of the remaining counts and Sepulveda makes the same claim as to count V. The facts already recounted make it plain that there was ample evidence to convict both defendants on the drug counts, and we are not going to waste time on this issue.

The evidence as to the weapon, which underpinned the two gun counts, has not been recounted but was also sufficient. Inside the apartment, the police found an opening in the ceiling through which the butt of a gun could be seen. The gun proved to be a fully operational sawed-off rifle. The location was within an arm's length of the barricaded window through which the sale had been made to the detective, and the butt could be reached easily by someone of average height standing inside the apartment at the window.

Given the circumstances—the vacant apartment, the actual sale, the additional drugs carried by Sepulveda—a reasonable jury could easily infer that the apartment was the base used by Sepulveda and Velasquez to retail their drugs. From the placement of the weapon, it could also be reasonably inferred that the defendants kept it there, well positioned and available, for po-

tential use in overawing an unruly customer or confronting a rival dealer. In short, the weapon could be attributed to the defendants and, coupled with evidence that the rifle was unregistered, this was enough to convict. *See* U.S.C. §§ 5841, 5861(d), and 5871.

The same evidence was also used to convict the defendants on the "use or carry" charge under U.S.C. § 924(c)(1). As to this count, the government's theory, and the jury instructions, were based on our pre-*Bailey* decisions which defined "use" more broadly than is now permissible. The government and defendants have already stipulated that the convictions of both defendants must be reversed under *Bailey,* together with the mandatory consecutive sentence imposed on this count. We agree.

The convictions and sentences on counts I–III and V are *affirmed,* the convictions and sentences on count IV is *reversed,* and the matter is *remanded* to the district court for proceedings consistent with this decision.

*It is so ordered.*