[NOT FOR PUBLICATION]

 UNITED STATES COURT OF APPEALS
 FOR THE FIRST CIRCUIT
 

No. 96-2124

 UNITED STATES,

 Appellee,

 v.

 OMAR GREENE,

 Defendant, Appellant.

 

 APPEAL FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF MASSACHUSETTS

 [Hon. Joseph L. Tauro, U.S. District Judge] 

 

 Before

 Torruella, Chief Judge, 
 Stahl and Lynch, Circuit Judges. 

 

Diana L. Maldonado on brief for appellant. 
Donald K. Stern, United States Attorney, and Christopher F. 
Bator, Assistant United States Attorney, on brief for appellee. 

 

 October 14, 1997
 

 Per Curiam. Pursuant to Fed. R. Crim. P. 11(a)(2), 

appellant Omar Greene entered a conditional guilty plea to

the charge of being a felon in possession of a firearm. See 

18 U.S.C. 922(g)(1). He now appeals the denial of his pre-

plea motion to suppress. For the reasons discussed below, we

affirm the order denying the motion to suppress and

appellant's conviction.

 I. 

 The following facts are undisputed. On the evening of

July 10, 1994, Boston police officers Charles Byrne, Michael

Linsky, and James Freeman, members of the Anti-Gang Violence

Unit, were together in a police vehicle in Roxbury. At

approximately 10:50 p.m., a taxicab sped by them and went

down Blue Hill Avenue. The officers pursued the cab and

activated their lights and siren once they had caught up to

it. The cab pulled over near an intersection that was about

3/4 of a mile from the place the police had first seen it.

Officers Linsky and Freeman then approached the driver's side

of the cab while officer Byrne proceeded to its right rear

passenger's side. Appellant was the sole passenger seated in

the rear of the cab. Officer Byrne saw appellant turn and

look at the approaching officers. 

 When officer Byrne arrived at the open passenger's

window, he heard appellant exclaim, "What did I do?"

Appellant appeared nervous. Byrne responded, "Who said you

 -2-

did anything?" and shined his flashlight in at appellant.

Byrne then observed a large bulge in appellant's right pants

pocket. Although he did not know appellant and indeed had

not even heard of him before that day, officer Byrne thought

that the bulge might be a gun and decided that it was

necessary to check to preserve the officers' safety. Byrne

opened the door of the cab, put his hand on the bulge, and

felt what he thought was a firearm. He announced this to his

colleagues and held appellant's arms while officer Freeman

removed from appellant's pocket a fully loaded semi-automatic

handgun with one round in the chamber and seven rounds in the

clip.1 During the course of these events, appellant made no 1

movements, save perhaps for turning his head when officer

Byrne initially shined his light on him. Appellant was

arrested and charged with two state firearm offenses.2 2

Ultimately, the state charges were dismissed and appellant

was charged with violating 18 U.S.C. 922(g).

 Relying on the transcript of officer Byrne's testimony

at his pretrial detention hearing, appellant moved to

suppress the gun and ammunition on the ground that the police

  

 1The gun bore an obliterated serial number and was later 1
found to be stolen. The record does not suggest that
appellant was the thief.

 2The cab driver was given a verbal warning and sent on his 2
way.

 -3-

lacked reasonable suspicion to stop and search him.3 After 3

the government filed an opposition, the district court

entered a one-sentence order that denied the appellant's

motion without stating its reasons. Ten months later, the

appellant entered a conditional guilty plea and was sentenced

to 30-months' imprisonment and two years of supervised

release. He now challenges the denial of his motion to

suppress. 

 II.

 Ordinarily, in reviewing the denial of a motion to

suppress, we scan the district court's findings of fact for

clear error, while affording plenary review to its

conclusions of law, including determinations of probable

cause and reasonable suspicion. See, e.g., Ornelas v. United 

States, 116 S. Ct. 1657, 1659-63 (1996); United States v. 

Young, 105 F.3d 1, 5 (1st Cir. 1997). Our review here is 

somewhat hampered because the district court's order denying

appellant's motion to suppress gave no reasons.

Nevertheless, an "order denying a motion to suppress is to be

upheld if any reasonable view of the evidence supports it."

United States v. Lamela, 942 F.2d 100, 102 (1st Cir. 

1991)(internal punctuation and citations omitted). As the

  

 3The motion to suppress also sought to exclude an 3
unspecified amount of marijuana which was found on appellant
after he was arrested. Appellant has not been charged with a
criminal offense based on this conduct. 

 -4-

essential facts are undisputed and the district court's legal

conclusions are subject to de novo review, we may simply 

decide whether the stop and search of appellant were valid.

Cf. United States v. Sepulveda, 102 F.3d 1313, 1315 (1st Cir. 

1996)(undertaking similar inquiry where underpinnings of

denial of motion to suppress were somewhat unclear).

 A reviewing court evaluating the reasonableness of an

investigative stop must perform a two-step inquiry. First,

the court must determine whether the police action was

justified at its inception. Second, the court must determine

whether the action taken was reasonably related in scope to

the circumstances which justified the intrusion. See, e.g., 

United States v. Young, 105 F.3d 1, 6 (1st Cir. 1997); United 

States v. Kimball, 25 F.3d 1, 6 (1st Cir. 1994). In 

assessing the reasonableness of a police officer's actions, a

court "must consider the totality of the circumstances which

confronted the officer at the time of the stop." United 

States v. Kimball, 25 F.3d at 6. 

 It is clear that the stop of the speeding cab was valid,

and appellant does not seriously contend otherwise. See 

United State v. Moorefield, 111 F.3d 10, 12 (3d Cir. 

1997)(traffic stop is lawful where police observe violation

of traffic regulations).4 This case turns on whether the 4

  

 4Although appellant concedes that he was physically 4
stopped as a result of the stop of the cab, he suggests that
he was not legally stopped because he was only a passenger

 -5-

ensuing pat-down search of appellant's person was justified.

 Appellant argues that the police were not justified in

frisking him because they lacked a particularized reasonable

suspicion directed at him. Since only the driver had

committed the traffic violation and appellant was only, in

his view, an "accidental guest" of the cab, appellant

maintains that the police had no reason to suspect him of any

crime. Appellant further asserts that where he made no

movements, the fact that officer Byrne saw a bulge in

appellant's pants did not give the officer a reasonable

suspicion to conduct a frisk. In contrast, relying on

Pennsylvania v. Mimms, 434 U.S. 106, 111-12 (1977), the 

government asserts that a bulge in the clothing of a person

travelling in a car that is lawfully stopped for a traffic

violation provides sufficient grounds for the officer to

believe that the person is armed and dangerous, thus

justifying a pat-down search.5  5

  

and was not a party to the driver's traffic violation. "When
a police officer effects an investigatory stop of a vehicle,
all occupants of that vehicle are subjected to a seizure as 
defined by the Fourth Amendment." United States v. Kimball, 
25 F.3d at 5. See also United States v. Robeson, 6 F.3d 
1088, 1091 (5th Cir. 1993)("a stop results in the seizure of
the passenger and the driver alike"). Thus, appellant was
lawfully stopped even though he was only a passenger the cab.

 5In Pennsylvania v. Mimms, 434 U.S. at 11 n. 6, the 5 
Supreme Court held that the police may order the driver to
exit a vehicle lawfully stopped for a traffic violation

 -6-

 Under Terry v. Ohio, 392 U.S. 1, 27 (1968), whether the 

pat-down search of the appellant was justified depends on

"whether a reasonably prudent man in the circumstances would

be warranted in the belief that his safety or that of the

others was in danger." Accord United States v. Villanueva, 

15 F.3d 197, 199 (1st Cir. 1994). Although we think it a

close question, we conclude that officer Byrne was warranted

in his belief that the officers' safety was in danger and

that he was further warranted in immediately performing a

pat-down of appellant. 

 To be sure, all the police knew was that: (1) appellant

was a passenger in a speeding cab who (2) had glanced back at

the officers as they approached, (3) appeared nervous, (4)

asked, "What did I do?" and (5) had a bulge in the pocket of

his pants. Appellant made no sudden or furtive movements,

and was not known to officer Byrne before that day.

Appellant contends that these observations do not support any 

suspicion that he was engaged in criminal activity, let alone

a crime where a gun might be present. We disagree.

  

without violating the Fourth Amendment. The Court recently
extended this rule to passengers. See Maryland v. Wilson, 
117 S. Ct. 882, 886 (1997)("an officer making a traffic stop
may order passengers to get out of the car pending completion
of the stop"). While Mimms also upheld a pat-down frisk of 
the driver based solely on the police officer's observation
of a bulge, Wilson did not involve a pat-down search. 
Because other circumstances were present in this case, we
need not decide whether the observation of a bulge on a
passenger of a vehicle stopped for a traffic violation will
alone justify a pat-down of the passenger. 

 -7-

Appellant's nervousness and question could reasonably be

construed by a seasoned police officer as evincing

consciousness of guilt. The bulge, even if alone not enough

to support a reasonable suspicion, was surely a factor to be

considered with the others given the widespread presence of

guns on the streets of Boston. See United States v. 

Villanueva, 15 F.3d at 199 (recognizing the plethora of gun 

carrying, particularly by the young). And while the officer

might well have conducted a lesser intrusion (e.g., by first

ordering the appellant to exit the cab, or by asking him

whether he was carrying a gun), it was not unreasonable for

him to simply proceed with a frisk where to have done

otherwise under the circumstances may have given appellant an

opportunity to use the gun. Cf. United States v. Young, 105 

F.3d 1, 7 (1st Cir. 1997)(holding police officer reasonably

lunged at gun of armed robbery suspect where lesser action

may have created risk of harm).6  6

 Other courts have upheld pat-down searches of passengers

who exhibited similarly suspicious behavior. See, e.g., 

United States v. Moorefield, 111 F.3d at 13-14 (collecting 

cases); United States v. Hassan El, 5 F.3d 726, 731 (4th Cir. 

1993)(upholding search in which officer grabbed at bulge

through open car window and removed handgun); United States 

  

 6The fact that the gun was found with a round of 6
ammunition chambered suggests that appellant was quite
prepared to use the weapon.

 -8-

v. Mitchell, 951 F.2d 1291, 1294-95 (D.C. Cir. 

1991)(upholding pat-down search of passenger who obeyed order

to exit car). To be sure, in each of these cases the

passengers appeared nervous and engaged in furtive movements

which gave the police cause for suspicion. Appellant made no

such movements here. Nevertheless, the foregoing cases

remain instructive. The fact that appellant made no

movements toward the gun did not eliminate the suspicion that

he drew to himself with his question, particularly in view of

the "inordinate risk of danger to law enforcement officers

during traffic stops...." United States v. Baker, 78 F.3d 

125, 137 (4th Cir. 1996)(upholding protective search of

driver who was subject of lawful traffic stop where driver

exhibited bulge that could be made by weapon). Given

appellant's nervousness, his assumption (evidenced by his

question), that he was the object of the stop, and the bulge

in his pocket, we think the frisk was justified.

Accordingly, the order denying appellant's motion to suppress

and the judgment of conviction are affirmed. 

 -9-