USCA1 Opinion

 

 [NOT FOR PUBLICATION] UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 96-2124 UNITED STATES, Appellee, v. OMAR GREENE, Defendant, Appellant. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Joseph L. Tauro, U.S. District Judge] ___________________ ____________________ Before Torruella, Chief Judge, ___________ Stahl and Lynch, Circuit Judges. ______________ ____________________ Diana L. Maldonado on brief for appellant. __________________ Donald K. Stern, United States Attorney, and Christopher F. _________________ ______________ Bator, Assistant United States Attorney, on brief for appellee. _____ ____________________ October 14, 1997 ____________________ Per Curiam. Pursuant to Fed. R. Crim. P. 11(a)(2), ___________ appellant Omar Greene entered a conditional guilty plea to the charge of being a felon in possession of a firearm. See ___ 18 U.S.C. 922(g)(1). He now appeals the denial of his pre- plea motion to suppress. For the reasons discussed below, we affirm the order denying the motion to suppress and appellant's conviction. I.  The following facts are undisputed. On the evening of July 10, 1994, Boston police officers Charles Byrne, Michael Linsky, and James Freeman, members of the Anti-Gang Violence Unit, were together in a police vehicle in Roxbury. At approximately 10:50 p.m., a taxicab sped by them and went down Blue Hill Avenue. The officers pursued the cab and activated their lights and siren once they had caught up to it. The cab pulled over near an intersection that was about 3/4 of a mile from the place the police had first seen it. Officers Linsky and Freeman then approached the driver's side of the cab while officer Byrne proceeded to its right rear passenger's side. Appellant was the sole passenger seated in the rear of the cab. Officer Byrne saw appellant turn and look at the approaching officers.  When officer Byrne arrived at the open passenger's window, he heard appellant exclaim, "What did I do?" Appellant appeared nervous. Byrne responded, "Who said you -2- did anything?" and shined his flashlight in at appellant. Byrne then observed a large bulge in appellant's right pants pocket. Although he did not know appellant and indeed had not even heard of him before that day, officer Byrne thought that the bulge might be a gun and decided that it was necessary to check to preserve the officers' safety. Byrne opened the door of the cab, put his hand on the bulge, and felt what he thought was a firearm. He announced this to his colleagues and held appellant's arms while officer Freeman removed from appellant's pocket a fully loaded semi-automatic handgun with one round in the chamber and seven rounds in the clip.1 During the course of these events, appellant made no 1 movements, save perhaps for turning his head when officer Byrne initially shined his light on him. Appellant was arrested and charged with two state firearm offenses.2 2 Ultimately, the state charges were dismissed and appellant was charged with violating 18 U.S.C. 922(g). Relying on the transcript of officer Byrne's testimony at his pretrial detention hearing, appellant moved to suppress the gun and ammunition on the ground that the police  ____________________ 1The gun bore an obliterated serial number and was later 1 found to be stolen. The record does not suggest that appellant was the thief. 2The cab driver was given a verbal warning and sent on his 2 way. -3- lacked reasonable suspicion to stop and search him.3 After 3 the government filed an opposition, the district court entered a one-sentence order that denied the appellant's motion without stating its reasons. Ten months later, the appellant entered a conditional guilty plea and was sentenced to 30-months' imprisonment and two years of supervised release. He now challenges the denial of his motion to suppress.  II. Ordinarily, in reviewing the denial of a motion to suppress, we scan the district court's findings of fact for clear error, while affording plenary review to its conclusions of law, including determinations of probable cause and reasonable suspicion. See, e.g., Ornelas v. United ___ ____ _______ ______ States, 116 S. Ct. 1657, 1659-63 (1996); United States v. ______ _____________ Young, 105 F.3d 1, 5 (1st Cir. 1997). Our review here is _____ somewhat hampered because the district court's order denying appellant's motion to suppress gave no reasons. Nevertheless, an "order denying a motion to suppress is to be upheld if any reasonable view of the evidence supports it." United States v. Lamela, 942 F.2d 100, 102 (1st Cir. ______________ ______ 1991)(internal punctuation and citations omitted). As the  ____________________ 3The motion to suppress also sought to exclude an 3 unspecified amount of marijuana which was found on appellant after he was arrested. Appellant has not been charged with a criminal offense based on this conduct.  -4- essential facts are undisputed and the district court's legal conclusions are subject to de novo review, we may simply __ ____ decide whether the stop and search of appellant were valid. Cf. United States v. Sepulveda, 102 F.3d 1313, 1315 (1st Cir. ___ _____________ _________ 1996)(undertaking similar inquiry where underpinnings of denial of motion to suppress were somewhat unclear). A reviewing court evaluating the reasonableness of an investigative stop must perform a two-step inquiry. First, the court must determine whether the police action was justified at its inception. Second, the court must determine whether the action taken was reasonably related in scope to the circumstances which justified the intrusion. See, e.g., ___ ____ United States v. Young, 105 F.3d 1, 6 (1st Cir. 1997); United _____________ _____ ______ States v. Kimball, 25 F.3d 1, 6 (1st Cir. 1994). In ______ _______ assessing the reasonableness of a police officer's actions, a court "must consider the totality of the circumstances which confronted the officer at the time of the stop." United ______ States v. Kimball, 25 F.3d at 6. ______ _______ It is clear that the stop of the speeding cab was valid, and appellant does not seriously contend otherwise. See ___ United State v. Moorefield, 111 F.3d 10, 12 (3d Cir. _____________ __________ 1997)(traffic stop is lawful where police observe violation of traffic regulations).4 This case turns on whether the 4  ____________________ 4Although appellant concedes that he was physically 4 stopped as a result of the stop of the cab, he suggests that he was not legally stopped because he was only a passenger -5- ensuing pat-down search of appellant's person was justified. Appellant argues that the police were not justified in frisking him because they lacked a particularized reasonable suspicion directed at him. Since only the driver had committed the traffic violation and appellant was only, in his view, an "accidental guest" of the cab, appellant maintains that the police had no reason to suspect him of any crime. Appellant further asserts that where he made no movements, the fact that officer Byrne saw a bulge in appellant's pants did not give the officer a reasonable suspicion to conduct a frisk. In contrast, relying on Pennsylvania v. Mimms, 434 U.S. 106, 111-12 (1977), the ____________ _____ government asserts that a bulge in the clothing of a person travelling in a car that is lawfully stopped for a traffic violation provides sufficient grounds for the officer to believe that the person is armed and dangerous, thus justifying a pat-down search.5  5  ____________________ and was not a party to the driver's traffic violation. "When a police officer effects an investigatory stop of a vehicle, all occupants of that vehicle are subjected to a seizure as ___ defined by the Fourth Amendment." United States v. Kimball, ______________ _______ 25 F.3d at 5. See also United States v. Robeson, 6 F.3d ___ ____ _____________ _______ 1088, 1091 (5th Cir. 1993)("a stop results in the seizure of the passenger and the driver alike"). Thus, appellant was lawfully stopped even though he was only a passenger the cab. 5In Pennsylvania v. Mimms, 434 U.S. at 11 n. 6, the 5 ____________ _____ Supreme Court held that the police may order the driver to exit a vehicle lawfully stopped for a traffic violation -6- Under Terry v. Ohio, 392 U.S. 1, 27 (1968), whether the _____ ____ pat-down search of the appellant was justified depends on "whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of the others was in danger." Accord United States v. Villanueva, ______ _____________ __________ 15 F.3d 197, 199 (1st Cir. 1994). Although we think it a close question, we conclude that officer Byrne was warranted in his belief that the officers' safety was in danger and that he was further warranted in immediately performing a pat-down of appellant.  To be sure, all the police knew was that: (1) appellant was a passenger in a speeding cab who (2) had glanced back at the officers as they approached, (3) appeared nervous, (4) asked, "What did I do?" and (5) had a bulge in the pocket of his pants. Appellant made no sudden or furtive movements, and was not known to officer Byrne before that day. Appellant contends that these observations do not support any ___ suspicion that he was engaged in criminal activity, let alone a crime where a gun might be present. We disagree.  ____________________ without violating the Fourth Amendment. The Court recently extended this rule to passengers. See Maryland v. Wilson, ___ ________ ______ 117 S. Ct. 882, 886 (1997)("an officer making a traffic stop may order passengers to get out of the car pending completion of the stop"). While Mimms also upheld a pat-down frisk of _____ the driver based solely on the police officer's observation of a bulge, Wilson did not involve a pat-down search. ______ Because other circumstances were present in this case, we need not decide whether the observation of a bulge on a passenger of a vehicle stopped for a traffic violation will alone justify a pat-down of the passenger.  -7- Appellant's nervousness and question could reasonably be construed by a seasoned police officer as evincing consciousness of guilt. The bulge, even if alone not enough to support a reasonable suspicion, was surely a factor to be considered with the others given the widespread presence of guns on the streets of Boston. See United States v. ___ ______________ Villanueva, 15 F.3d at 199 (recognizing the plethora of gun __________ carrying, particularly by the young). And while the officer might well have conducted a lesser intrusion (e.g., by first ordering the appellant to exit the cab, or by asking him whether he was carrying a gun), it was not unreasonable for him to simply proceed with a frisk where to have done otherwise under the circumstances may have given appellant an opportunity to use the gun. Cf. United States v. Young, 105 ___ _____________ _____ F.3d 1, 7 (1st Cir. 1997)(holding police officer reasonably lunged at gun of armed robbery suspect where lesser action may have created risk of harm).6  6 Other courts have upheld pat-down searches of passengers who exhibited similarly suspicious behavior. See, e.g., ___ ____ United States v. Moorefield, 111 F.3d at 13-14 (collecting ______________ __________ cases); United States v. Hassan El, 5 F.3d 726, 731 (4th Cir. _____________ _________ 1993)(upholding search in which officer grabbed at bulge through open car window and removed handgun); United States _____________  ____________________ 6The fact that the gun was found with a round of 6 ammunition chambered suggests that appellant was quite prepared to use the weapon. -8- v. Mitchell, 951 F.2d 1291, 1294-95 (D.C. Cir. ________ 1991)(upholding pat-down search of passenger who obeyed order to exit car). To be sure, in each of these cases the passengers appeared nervous and engaged in furtive movements which gave the police cause for suspicion. Appellant made no such movements here. Nevertheless, the foregoing cases remain instructive. The fact that appellant made no movements toward the gun did not eliminate the suspicion that he drew to himself with his question, particularly in view of the "inordinate risk of danger to law enforcement officers during traffic stops...." United States v. Baker, 78 F.3d ______________ _____ 125, 137 (4th Cir. 1996)(upholding protective search of driver who was subject of lawful traffic stop where driver exhibited bulge that could be made by weapon). Given appellant's nervousness, his assumption (evidenced by his question), that he was the object of the stop, and the bulge in his pocket, we think the frisk was justified. Accordingly, the order denying appellant's motion to suppress and the judgment of conviction are affirmed. ________ -9-