In the Matter of Thomas M. FLANNERY, an attorney.

In the Matter of Patrick Watts, an attorney.

In the Matter of James E. Banagan, an attorney.

In the Matter of Harold J. Pokel, an attorney.

Docket Nos. 97–8210, 96–8212, 95–8208 and 97–8222.

United States Court of Appeals, Second Circuit.

Submitted: Jan. 12, 1999.

Decided: June 14, 1999.

Before: WINTER, Chief Judge, VAN GRAAFEILAND, and KEARSE, Circuit Judges.

## CORRECTED OPINION

PER CURIAM.

The Sixth Amendment's guarantee of effective assistance of appellate counsel, see *Evitts v. Lucey,* 469 U.S. 387, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985), requires that defense attorneys in criminal cases prosecute appeals vigorously and diligently. *See United States v. Gerrity,* 804 F.2d 1330, 1331 (7th Cir.1986) (per curiam) ("The [criminal] defendants, often imprisoned while their appeals are pending, depend on their attorneys to prosecute their appeals vigorously...."). The vigorous prosecution of an appeal requires minimally the filing of a main appellate brief. Each of the four attorneys involved in these proceedings—Thomas M. Flannery, Patrick Watts, James E. Banagan, and Harold J. Pokel—caused the dismissal of his respective client's appeal by failing to file such a brief, despite numerous opportunities to cure his default. Each respondent has also ignored subsequent orders to show cause why he should not be subject to discipline for causing his client's appeal to be dismissed by default.

Misconduct of this nature is ongoing. We are, therefore, adopting a formal policy regarding sanctions for such misconduct, as set forth more fully below.

An attorney who fails to prosecute a criminal appeal will eventually cause the client's case to be dismissed by default. Before we dismiss an appeal, however, we provide the attorney a number of opportunities to cure the default. When an attorney fails to file a timely main brief in a criminal appeal, we send a "20–day letter" to the attorney advising that the client's appeal will be dismissed by default unless a brief and appropriate appendices are filed within 20 days. An attorney who receives such a letter generally cures the default by filing a brief within the 20–day period. Some, however, allow the 20–day period to expire without filing the required brief. Court personnel then telephone the attorney at least twice to urge the filing of a brief to prevent dismissal of the appeal. Again, most attorneys who receive such calls contact the court immediately and file the required documents.

There are nevertheless some attorneys who, even after the expiration of the 20–

day period and repeated telephone calls from the court, fail to file a main brief on their client's behalf. In such cases, we dismiss the appeal and issue a formal order to show cause why the attorney should not be subject to discipline pursuant to Fed.R.App.P. 46(c). Most attorneys respond to such an order to show cause in a timely fashion, offer to cure the default, and explain why they failed to fulfill their responsibilities to their clients and to the court. Such responses are referred to the Chief Judge. For the most part, the curing of the default and reinstatement of the appeal, along with the explanation, suffice to cause the Chief Judge to close the proceeding without imposing sanctions.

Some attorneys, however, ignore even the order to show cause. In the past, such matters have caused the Chief Judge to impose sanctions or other discipline. In light of the egregiousness and recurrence of this misconduct, and of the serious sanctions that might result, we have decided to refer to a three-judge panel that regularly hears motions each Tuesday those attorneys who fail to respond satisfactorily to such orders, for the panel's consideration of sanctions against them.

Accordingly, in December 1998, we issued to all attorneys who had ignored a 20–day letter, repeated telephone calls, and an order(s) to show cause, yet another order to show cause, advising them that failure to respond by December 28, 1998, would result in the matter being referred for action to the three-judge panel scheduled to sit on January 12, 1999. The four attorneys named above failed to respond in a timely fashion.

In the course of considering these four proceedings, we have decided to adopt the following policy. Any attorney who fails to file a main brief and, after receiving a 20–day letter and two phone calls from court personnel, causes the client's appeal to be dismissed by default, will be issued an order to show cause why he or she should not be disciplined. The attorney's response, if any, will go to the Chief Judge who, if satisfied that the default has been explained and will be, or has been, quickly cured, may close the disciplinary proceeding without further action. If doubt exists either with regard to the explanation or the cure, the Chief Judge will direct the Clerk to refer the matter to a regular Tuesday panel of the court to take such action as the panel deems appropriate. The attorney will be notified of the reference and given an opportunity to respond.

If an attorney fails to respond to the first order to show cause within the prescribed time period, another order will issue directing the attorney to show cause before a designated Tuesday panel of the court why he or she should not be sanctioned. At this stage, the attorney will have both abandoned the client and ignored an order of the court, and sanctions will generally be appropriate. If an attorney responds with an explanation and commitment to avoid future misconduct, he or she will generally be subject to a monetary penalty in the amount of $200 and public censure. If the attorney fails to respond altogether, he or she shall generally be subject to a monetary penalty of $3,000 and suspension from practice in this court. The term of suspension will generally be determined by the number of times the attorney has caused the dismissal of an appeal by default—*viz.*, one year if it is the first time the attorney caused the dismissal of an appeal by default, one-and-a-half years if the second time, and two years if the third. Of course, mitigating or aggravating circumstances may justify a departure from these standards.

An attorney who receives a fine as a sanction must pay the fine by the designated time or an order of suspension from practice in this court will issue. The suspension may be lifted only upon payment of the fine with interest from the due date. An attorney who receives a suspension as a sanction may apply to have the suspension lifted after the designated period. Such a request will be referred to the judge then serving as applications judge

for a determination as to whether the attorney has satisfactorily shown: (i) familiarity with, and willingness to conform to, this court's rules and his or her obligations to clients and (ii) the payment of any outstanding fines with interest from the due date.

In addition to the foregoing, given the number of opportunities for explanation and corrective measures that are provided prior to the imposition of punitive measures, every fine, censure and suspension will be brought by the Clerk of this Court to the attention of the relevant state disciplinary entity and the district courts of this Circuit. With this standard in mind, we turn to an examination of each respondent's misconduct and the sanctions warranted thereby.

## A. Thomas M. Flannery

■ Thomas M. Flannery was appointed counsel for the appellant in *United States v. Gore*, 154 F.3d 34 (2d Cir.1998), but did not submit a brief within the prescribed period. He was then sent a 20–day letter but failed either to file a brief or contact the court within 20 days. Flannery was then telephoned at least twice after the expiration of the 20–day period in an attempt to prevent him from causing the dismissal of the appeal through his failure to file a brief. Again, Flannery neither filed a brief nor contacted the court. Finally, the appeal was dismissed by default.

We subsequently reinstated the appeal on a motion from his client *pro se*, relieved Flannery as counsel, and issued an order requiring Flannery to show cause why he should not be subject to discipline under Fed.R.App.P. 46(c). *See* Docket Sheet, 97–8210. The order to show cause was returned by the Postal Service marked "return to sender, attempted—not known." *Id.* A staff member of this court then contacted Flannery by telephone. *See id.* Flannery verified that the address was correct but explained that he was having trouble with the mail. *See id.* According

to the docket entry, Flannery represented that he was appointed by the lower court as a "legal adviser" and was "not really counsel of record." *Id.* Flannery was advised to respond to the order to show cause and explain the situation. *See id.* The order to show cause was then faxed and re-mailed to him. *See id.*

In December 1998, we issued a second order to show cause, returnable December 28, 1998, warning that failure to respond would result in the matter being referred to the Tuesday panel for further action. To date, Flannery has not responded.

Flannery's default in the *Gore* case was not aberrational. He has defaulted in at least two other cases, each time causing the dismissal of his clients' appeals, *see United States v. Andrades*, No. 98–1112 (dismissed in May 1998); *United States v. Agramonte*, No. 91–1480 (dismissed in January 1992), and each time ignoring our letters, phone calls, and orders prodding him to fulfill his responsibilities to his clients.

This neglect of a client's interests and pattern of ignoring our orders demonstrate that a serious sanction is warranted. Accordingly, Flannery is hereby fined $3,000, payable by certified check to the Clerk of the Court within thirty days of the date of this opinion. He is also suspended for two years from the date of this opinion from practice in this court, with leave to apply for reinstatement upon the expiration of said period, as described above. Copies of this order shall be sent to each New York State Appellate Division and each of the district courts in the Second Circuit, as well as any other jurisdiction where Flannery is admitted.

## B. Patrick Watts

■ Patrick Watts was retained as counsel by appellant in *United States v. Pena*, No. 96–1243. Watts did not, however, submit a brief within the prescribed period. Watts was also sent a 20–day letter, which he ignored. Watts was then

telephoned at least twice in an attempt to prevent him from causing the dismissal of the appeal. Again, Watts neither filed a brief nor contacted the court. Finally, in July 1996, the appeal was dismissed by default. *See* Docket Sheet, 96–1243.

In August 1996, Watts. was ordered to show cause why discipline should not be imposed. *See* Docket Sheet, 96–8212. Watts failed to respond or otherwise contact the court. In June 1997, then-Chief Judge Newman fined Watts $2,500 for his failure to respond to our order. In December 1998, we issued another order to show cause, warning that failure to respond by December 28, 1998, would result in the matter being referred to this panel for further action. *See id.*

During the afternoon of January 12, 1999, after this proceeding had been submitted for decision at the conclusion of the morning session, Watts contacted the court and paid the outstanding $2,500 fine. However, he offered no explanation for the untimeliness of his payment or of his response to our second order to show cause.

Although Watts has not defaulted on any other appeals and although he eventually paid his outstanding $2,500 fine, he allowed the *Pena* case to be dismissed by default, repeatedly disregarded our orders, and failed to pay the fine promptly. We believe that the totality of Watts's misconduct calls for an additional fine of $200, payable by certified check to the Clerk of the Court within thirty days of the date of this opinion. If the additional fine is not paid, he shall be suspended from practice in this court until a tender of the fine plus interest from the expiration of the thirty-day period is made. We further order that public censure be imposed on Watts for poor professional conduct in the discharge of his duties to his client. Copies of this order shall be sent to each New York State Appellate Division and each of the district courts in the Second Circuit, as well as any other jurisdiction where Watts is admitted.

## C. *James E. Banagan*

▮ James E. Banagan was appointed counsel for the appellant in *United States v. Bingham*, No. 95–1115. Banagan did not submit a brief in a timely fashion. After he ignored the 20–day letter, Banagan was telephoned in an attempt to prevent him from causing the dismissal of his client's appeal. Banagan neither filed a brief on his client's behalf nor contacted the court. Finally, in May 1995, the appeal was dismissed by default. *See* Docket Sheet, 95–1115.

On June 15, 1995, Banagan informed the court that he would file both a brief and a motion to reinstate by June 20, 1995 but submitted neither. *See id.* After five more attempts to induce Banagan to file a brief, we issued an order in September 1995 requiring him to show cause why discipline should not be imposed. *See id.* Banagan responded, and, accepting his explanation for the default, we granted additional time to move for reinstatement and perfect the appeal. *See* Docket Sheet, No. 95–8208. Banagan again defaulted. *See id.* On June 12, 1997, then-Chief Judge Newman sanctioned Banagan in the amount of $2,500 for failure to prosecute the appeal. *See id.* Banagan made no attempt to remit the fine or contact the court. In December 1998, we issued yet another order to show cause, warning that failure to respond by December 28, 1998, would result in the matter being referred to this panel for further action. *See id.* To date, Banagan has not contacted the court.

Banagan also defaulted in *United States v. Joyner*, No. 96–1198, thereby causing dismissal of that appeal. Thus, Banagan has manifested a pattern of neglect of his clients' cases. Moreover, he never followed through on his promises to rectify his misconduct, failed to respond to our orders, and failed to pay the $2,500 fine imposed on him in June 1997. Had Banagan not been previously fined, we would impose a fine of $3,000. However, because

he has already been fined for his misconduct, we now fine him only $500 additionally for ignoring the December 1998 order and another $1,000 for ignoring the previous fine, for a total of $4,000. We order that this amount be paid by certified check to the Clerk of the Court within thirty days of the date of this opinion after which date interest will begin to accrue on the total amount. We further suspend Banagan for one-and-a-half years from the date of this opinion from practice in this court, with leave to apply for reinstatement upon the expiration of said period. Copies of this order shall be sent to each New York State Appellate Division and each of the district courts in the Second Circuit, as well as any other jurisdiction where Banagan is admitted.

D. *Harold J. Pokel*

■ Harold J. Pokel was appointed counsel for the appellant in *United States v. Thomas*, No. 97–1328. Pokel did not, however, submit a brief on his client's behalf within the prescribed period. He was sent a 20–day letter, yet failed to file a brief or to contact the court within 20 days. He was then telephoned at least twice in an attempt to prevent him from causing the dismissal of the appeal by default. Pokel nevertheless failed to cure the default. Finally, in October 1997, the appeal was dismissed. *See* Docket Sheet, 97–1328.

In December 1997, Pokel was ordered to show cause why discipline should not be imposed. He failed to respond. *See* Docket Sheet, 97–8222. In January 1998, we relieved Pokel as counsel, reinstated the appeal *sua sponte,* and ordered that new counsel be appointed pursuant to the Criminal Justice Act, 18 U.S.C. § 3006. *See* Docket Sheet, 97–1328. In December 1998, we issued a second order to show cause, returnable December 28, 1998, warning that failure to respond would result in the matter being referred to the Tuesday panel for further action. *See* Docket Sheet, 97–8222.

On December 28, 1998, Pokel telephoned the court to request that his time to respond be extended to January 8, 1999. *See* Letter from Harold Pokel to Beth Meador (Dec. 29, 1998). He was instructed to submit his response along with a motion for an extension of time. *See id.* Pokel's "motion for leave to submit response out of time" and the response were both received on January 8, 1999.

In his motion for more time, Pokel stated that he was unable to respond in a timely fashion to the December 1998 order to show cause because he had the flu. He averred that upon his recovery, he acted promptly. In his response to that order, Pokel explained that he mishandled the *Thomas* appeal because his mother had recently suffered a severe spinal stroke that left her partially paralyzed. He was required to make several trips to Wisconsin to care for her and manage her affairs. It was during this family crisis that Pokel was replaced as counsel. Pokel acknowledged in his response that he "should have asked to be relieved as appellate counsel on the *Thomas* appeal," but claims that he believed the appeal was frivolous and that he intended to file an *Anders* brief. *See Anders v. California,* 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967).

Pokel's case involves circumstances that mitigate the nature of his misconduct. First, unlike the other respondents, Pokel offered an explanation, albeit belated, for his default. Moreover, Pokel averred that he believed that his client's appeal had no merit and that he would have moved to be relieved as counsel were it not for his family crisis. The successful *Anders* brief filed by his replacement counsel, *see* Docket Sheet 97–1328, confirms Pokel's claim that his client's appeal was frivolous and that no harm was suffered by his client. Finally, while Pokel defaulted on one other appeal leading to the dismissal of his client's case, *see United States v. Alada,* No. 97–1335, such default occurred during the same period as the *Thomas* appeal— presumably due to the same family cri-

sis—and ultimately was of no harm to the client, who agreed to withdraw the appeal.

These mitigating factors notwithstanding, we find Pokel's conduct unacceptable. Family crises should prompt motions to be relieved, not inaction. Moreover, even after his family crisis subsided, Pokel still failed to contact the court about the outstanding order to show cause even though it was his responsibility to do so. Accordingly, Pokel is hereby fined in the amount of $500, payable by certified check to the Clerk of the Court within thirty days of the date of this opinion and is hereby censured for unacceptable professional conduct in the discharge of his duties to his client. If the fine is not paid in a timely fashion, he shall be suspended from practice in this court until it is tendered with interest accruing from the end of the thirty-day period. Copies of this order shall be sent to each New York State Appellate Division and each of the district courts in the Second Circuit, as well as any other jurisdiction where Pokel is admitted.

This opinion was circulated to all the members of the court before filing.