08-90123-am
In re Jonathan Einhorn

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 16th day of May, two thousand eleven.

PRESENT:

José A. Cabranes,
Robert D. Sack,
Richard C. Wesley,
            *Circuit Judges.*

---

In re Jonathan Einhorn,                                           08-90123-am

            Attorney.                              **ORDER OF**
                                                   **GRIEVANCE PANEL**

---

For Jonathan Einhorn:          William F. Dow III, Esq., New
                               Haven, Connecticut.

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the report of this Court's Committee on Admissions and Grievances ("the Committee") is adopted, and JONATHAN EINHORN

is PUBLICLY REPRIMANDED for the misconduct described in the Committee's report.

## I. Summary of Proceedings

By order filed in October 2008, this Court ordered Einhorn to show cause why he should not be disciplined for defaulting in a number of appeals in this Court and causing four of those defaulted appeals to be dismissed. After finding Einhorn's response to the October 2008 order to be unsatisfactory, this Court referred Einhorn to the Committee for investigation of the matters described in the October 2008 order and preparation of a report on whether he should be subject to disciplinary or other corrective measures.

During the Committee's proceedings, Einhorn had the opportunity to address the matters discussed in the Court's referral order and to testify under oath at a hearing held on April 6, 2010. Einhorn was represented during the Committee's proceedings by William F. Dow III, Esq. Presiding over the hearing were Committee members Paul C. Curnin, Esq., James I. Glasser, Esq., and the Honorable Howard A. Levine. In August 2010, the Committee filed with the Court the record of the Committee's proceedings and its report and recommendations. Thereafter, the Court provided Einhorn with a copy of the Committee's report, and Einhorn responded.

In its report, the Committee concluded that there was clear

and convincing evidence that Einhorn had engaged in conduct warranting the imposition of discipline. *See* Report at 1, 5. Specifically, the Committee found that Einhorn had frequently failed to meet this Court's filing deadlines, resulting in the dismissals of four criminal appeals, all of which were later reinstated. *Id.* at 4-5. After finding no aggravating factors and various mitigating factors, the Committee recommended that Einhorn be publicly reprimanded. *Id.* at 5-6. In his response to the Committee's report, Einhorn agreed with the Committee's recommendation, apologized for his misconduct, and assured the Court that it would not happen again. Response at 1.

**II. Conclusions**

Upon due consideration of the Committee's report, the underlying record, and Einhorn's submissions, it is hereby ORDERED that Einhorn is PUBLICLY REPRIMANDED for his misconduct in this Court. Although that misconduct generally would warrant more severe disciplinary measures, *see generally In re Flannery*, 186 F.3d 143, 145-49 (2d Cir. 1999)(per curiam), we agree with the Committee that the mitigating factors in this matter are sufficient to reduce the disciplinary measure we impose to a public reprimand.

The text of this panel's October 2008 and July 2009 orders and the Committee's report are appended to, and deemed part of, the present order for the following disclosure purposes. Einhorn must disclose this order to all courts and bars of which he is

3

currently a member, and as required by any bar or court rule or order. Einhorn also must, within fourteen days of the filing of this order, file an affidavit with this Court confirming that he has complied with the preceding disclosure requirement. Furthermore, the Clerk of Court is directed to release this order to the public by posting it on this Court's web site and providing copies to members of the public in the same manner as all other unpublished decisions of this Court, and to serve a copy on Einhorn, this Court's Committee on Admissions and Grievances, the State of Connecticut's Statewide Grievance Committee, the grievance committee for the United States District Court for the District of Connecticut, and all other courts and jurisdictions to which this Court distributes disciplinary decisions in the ordinary course.[1]

> FOR THE COURT:
> Catherine O'Hagan Wolfe, Clerk

> By:  Michael Zachary
>      Counsel to the Grievance Panel

---

[1] Counsel to this panel is authorized to provide, upon request, documents from the record of this proceeding to other attorney disciplinary authorities. While we request that all such documents remain confidential to the extent circumstances allow, we leave to the discretion of those disciplinary authorities the decision of whether specific documents, or portions of documents, must be made available to any person or the public.

## APPENDIX 1

## Text of October 2008 order

For the reasons that follow, Jonathan Einhorn is ordered to show cause why disciplinary or other corrective measures should not be imposed on him, pursuant to Federal Rule of Appellate Procedure 46(b) and (c) and Second Circuit Local Rule 46.

A review of cases filed in this Court since 2000 suggests that Einhorn has had serious difficulty complying with orders and rules of the Court. At least five of his cases have been dismissed based on his failure to file a brief or other document by the deadline specified in an order of the Court, although all five cases were later reinstated pursuant to motions. *See* Second Circuit cases docketed under 00-9117-cv (failed to file Forms C and D); 03-1276-cr (L) (failed to file brief; represented defendant-appellant Nunley); 04-4330-cr (failed to file brief); 05-1294-cr (L) (same; represented defendant-appellant Cartelli); 06-4460-cr (same). He also failed to timely file documents in a number of other cases, although those defaults did not result in dismissal. *See* Second Circuit cases docketed under 02-1538-cr; 03-7265-cv; 04-1152-cr; 04-2936-cr; 04-3899-cr; 05-0709-cr; 05-2735-cr; 05-2969-cv; 06-0567-cr; 06-1752-cr; 07-3018-cr. In several of the preceding cases, his defaults occurred despite receiving warnings that further extensions would not be granted, or having an extension motion denied and a grace period provided. *See* Second Circuit cases docketed under 04-1152-cr; 04-3899-cr; 04-4330-cr; 05-1294-cr; 06-1752-cr. Many of his defaults have required this Court's personnel to make special efforts to inform him of his need to cure the default, *see* Second Circuit cases docketed under 03-7265-cv; 04-1152-cr; 04-2936-cr; 04-4330-cr; 05-0709-cr; 05-1294-cr; 06-0567-cr, and at least two resulted in orders to show cause why he should not be sanctioned, *see United States v. Frankel*, No. 06-1752-cr, order to show cause filed Sept. 11, 2007, order closing show-cause proceeding, without imposition of sanction, filed Apr. 25, 2008; *United States v. Jones (Nunley)*, No. 03-1276-cr, order to show cause filed Sept. 11, 2007, order closing show-cause proceeding, without imposition of sanction, filed Feb. 6, 2008.

Upon due consideration of the matters described above, it is hereby ORDERED that Jonathan Einhorn show cause, by a detailed declaration, why disciplinary or other corrective measures should not be imposed on him, pursuant to Federal Rule of Appellate Procedure 46(b) and (c) and Second Circuit Local Rule 46. The declaration must be made under penalty of perjury and filed

5

within twenty-eight days of the filing date of this order. Furthermore, the declaration must include: (a) a complete list of all cases in this Court in which Einhorn is, or was, counsel of record for a party; (b) a complete list of all bars of which he is a member, including all bar numbers and other bar identification information, and a statement of whether he is in good standing with each identified bar; (c) a statement of whether he has been disbarred, suspended, or otherwise disciplined by any bar or court and, if so, a copy of each document imposing such a disciplinary measure must be attached to the declaration; (d) a statement of whether, aside from any document listed in response to clause (c), he has ever been ordered by any court or bar disciplinary authority to show cause why he should not be disciplined and, if so, a copy of each such order, and any response to the order, must be attached to the declaration; and (e) a discussion of whether his clients were prejudiced in any way by the conduct noted above.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

By:_____/s/_____
          Michael Zachary
          Counsel to the Grievance Panel


## APPENDIX 2

### Text of July 2009 order

By order filed October 29, 2008, Jonathan Einhorn was ordered to show cause why disciplinary or other corrective measures should not be imposed on him, pursuant to Federal Rule of Appellate Procedure 46(b) and (c) and Second Circuit Local Rule 46.

The October 2008 order stated that, according to this Court's records, Einhorn has had serious difficulty complying with orders and rules of the Court. Specifically, it was noted that (a) at least five of his cases had been dismissed based on his failure to file a brief or other document by the deadline specified in an order of the Court, (b) he had failed to timely file documents in a number of other cases, although those defaults did not result in dismissal, (c) in several of the preceding cases, his defaults occurred despite receiving warnings that further extensions would not be granted, or having an extension motion denied and a grace period provided, (d) many of his defaults required this Court's personnel to make special

efforts to inform him of his need to cure the default, and (e) at least two defaults resulted in orders to show cause why he should not be sanctioned. *See* Oct. 2008 order at 1-2 (citing cases under each category).

In Einhorn's response to the October 2008 order, he states, *inter alia*, that he has never been disciplined by any bar or court, he is in good standing with all bars of which he is a member, and none of his clients were prejudiced by the conduct described in our October 2008 order. *See* Einhorn declaration at 2, 5-6. He also apologizes for instances where he filed late briefs and states that he will not do so in the future. *Id.* at 2, 5. However, he also asserts that the October 2008 order contains numerous errors and discusses the relevant cases individually. *Id.* at 1-5.

## I. *Community Television v. Caruso*, 00-9117-cv

We agree with Einhorn that the October 2008 order erroneously attributed to him the default dismissal in *Community Television v. Caruso*, 00-9117-cv, when in fact the dismissal occurred six days before he filed his notice of appearance in the case. *See* 00-9117-cv, order filed Sept. 26, 2000, notice filed Oct. 2, 2000. Thus, the docket suggests that prior counsel may have been responsible for that default. However, the vast majority of Einhorn's objections to the October 2008 order are incorrect.

## II. The Default Dismissals

As an initial matter, two points require clarification. First, a "default" occurs when an attorney or litigant fails to file a document by the deadline specified in an order or rule of this Court. There is no requirement that a "default entry" be made on the docket before the failure to file can be treated as a default. It is not clear why Einhorn denies the existence of numerous defaults that are clearly reflected in this Court's records, but his repeated assertion that no defaults were "entered" suggests that he may be under the misapprehension that a default does not exist unless an entry specifically uses the word "default" to describe his behavior. Second, while the employees of this Court are expected to help litigants and attorneys with the processing of their cases, litigants and attorneys nonetheless are required to keep track of their own deadlines and should rarely need notification that a brief or other document is overdue.

Einhorn first states that the October 2008 order

7

"erroneously claimed that five (5) cases were dismissed due to failure to file briefs or other documents." Einhorn declaration at 1. Although Einhorn correctly states that he is not responsible for the default in *Community Television*, review of the relevant dockets demonstrates that he is incorrect as to the other four cases, which were dismissed based on his failure to file briefs. *See* cases docketed under 03-1276-cr (L); 04-4330-cr; 05-1294-cr (L); 06-4460-cr. Moreover, when discussing those four cases, his argument that our October 2008 order "erroneously states that a brief was not filed," *id.*, at 3 (items 7 and 8), 4 (item 14), and "unfair[ly] ... note[s] ... that a brief was never filed," *id.*, at 4 (item 15), materially mischaracterizes the concern we expressed about those cases. The order clearly, and accurately, states that those cases were "dismissed based on his failure to file a brief or other document by the deadline specified in an order of the Court, although all [four] cases were later reinstated pursuant to motions." *See* Oct. 2008 order at 1. The fact that briefs were eventually filed does not render our description of those cases inaccurate. By mischaracterizing the order as stating that no briefs were filed, Einhorn focuses on a straw man without addressing the actual problem - his defaults in those cases that caused their dismissal.

His discussion of the four dismissed cases is incomplete or misleading in other ways. Regarding *United States, v. Tate*, 06-4460-cr, Einhorn notes the dismissal of the appeal, but fails to mention the reason for that dismissal – his default – and simply states that his brief was timely filed after the reinstatement of the case. *See* Einhorn declaration at 3 (item 7) (case cited as "04-4660"). Regarding *United States v. Artis*, 04-4330-cr, Einhorn never explicitly mentions either the dismissal or the reason for the dismissal – his default. Although he mentions a motion for reinstatement and for leave to file late, the circumstances requiring that motion are not described, aside from a reference to transcripts that were difficult to obtain. *Id.* at 3 (item 8). However, while this Court's files concerning *Artis* show that an earlier motion for an extension was based on a lack of transcripts, *see Artis*, 04-4330-cr, motion filed Dec. 20, 2004, they do not support the suggestion that a difficulty in obtaining transcripts caused the final default and dismissal. Einhorn's May 2005 motion for an extension of time to file the *Artis* brief stated that Einhorn had received the transcripts but was unable to timely prepare the brief due to his trial schedule. *See id.*, motion filed May 16, 2005. In response, the Court granted a 15-day extension which, since that period commenced on August 3, 2005, amounted to an extension of over five months from the prior deadline. *Id.*, order filed Dec. 23, 2004 (noting deadline of Feb. 28, 2005), order filed Aug. 3, 2005 (granting

8

15-day extension). Thereafter, Einhorn defaulted for the second time, resulting in dismissal. *Id.*, order filed Oct. 27, 2005.

Regarding *United States v. Cartelli*, 05-1294-cr, Einhorn acknowledges that the appeal was dismissed based on his failure to comply with a briefing order, but does not mention his failure to comply with a number of prior briefing orders. *See* Einhorn declaration at 4 (item 14). In July 2005, this Court ordered Einhorn to file his brief by August 25, 2005, and stated that no further extension requests would be granted absent extraordinary circumstances. *See* 05-1294-cr, order filed July 28, 2005. However, Einhorn failed to comply, and his motion for an additional extension was denied, although a seven-day grace period was granted. *See id.*, motion filed Sept. 6, 2005, order filed Sept. 15, 2005. Einhorn took no action until December 2005 when he again moved for an extension, which was granted until January 6, 2006. *See id.*, motion filed Dec. 6, 2005, order filed Dec. 9, 2005. Einhorn again failed to comply, and in February 2006 moved for another extension, which was denied, resulting in dismissal. *See id.*, motion filed Feb. 22, 2006, orders filed Mar. 10, and Oct. 27, 2006. After the dismissal, Einhorn filed a brief and a motion to reinstate the appeal, which was granted. *See id.*, motion filed Jan. 19, 2007, order filed Jan. 25, 2007.

Regarding *United States v. Jones (Nunley)*, 03-1276-cr, Einhorn argues that it is "unfair to simply note in the [order] that a brief was never filed in this case." Einhorn declaration at 4 (item 15). However, the order did not say that a brief was *never* filed, and the record clearly shows that the case was dismissed based on Einhorn's failure to file a brief. In fact, Einhorn defaulted more than once in the appeal. After the deadline for his brief had already passed, Einhorn moved for an extension of time, which was granted, and a new briefing order was issued. *See* 03-1276-cr, motion filed Apr. 12, 2006, order filed Apr. 20, 2006. Thereafter, a series of additional extensions were granted, as a result of new attorneys or appellants coming into the appeal. Einhorn failed to file a brief pursuant to any of the new scheduling orders and his appeal was dismissed, although later reinstated upon the Government's motion. *See id.*, motion filed June 8, 2007 (noting Einhorn's failure to comply with "numerous scheduling orders" and resulting dismissal), order filed Sept. 11, 2007 (reinstating appeal). Although Einhorn now refers to the "extraordinarily complicated" proceedings and errors by the Court, *see* Einhorn declaration at 4 (item 15), he never explicitly addresses his own failure to file a brief. During the appeal, Einhorn stated that he had mistakenly thought that he had been relieved by the Court in August 2005. *See* 03-1276-cr, motion filed Sept. 20, 2007. Although this Court declined to sanction him based on that

9

alleged misunderstanding, *see id.*, order filed Feb. 6, 2008, his explanation seems to conflict with the fact that he had filed a motion for an extension of time for that same client in April 2006,[2] *id.*, motion filed Apr. 12, 2006.

### III. Other Defaults

Regarding the remaining cases, Einhorn denies that any defaults occurred, although he admits that his briefs were late in a few cases. *See* Einhorn declaration at 2-5 (items 1, 3-6, 9-13, 15). As a result of Einhorn's position, each of the cases has been reviewed, multiple times, and this laborious process has confirmed that he is simply incorrect as to every case. Not only did he default on a filing deadline in each case, but, perhaps worse, now presents a misleading or incomplete description of several of the relevant cases. *See United States v. Yandow*, 04-1152-cr (denies default occurred); *Brown v. Area Cooperative*, 03-7265-cv (denies default; states brief was late by few days, although late by month); *United States v. Brewer (Thompson)*, 04-2936-cr (denies default occurred); *United States v. Torres*, 05-0709-cr (same; states brief was timely without mentioning prior default); *United States v. 32 Medley Lane*, 05-2969-cv (states Forms C & D were one day late, although filed over nine months after appeal opened); *United States v. Reed*, 04-3899-cr (states brief was "delayed" without addressing default issue); *United States v. Alejandro*, 02-1538-cr (denies default occurred); *United States v. Luna*, 07-3018-cr (same); *United States v. Riccitelli*, 05-2735-cr (denies default; states brief was late by three days without mentioning prior default); *United States v. Riccitelli*, 06-0567-cr (states brief was five months late without addressing default issue); *United States v. Frankel*, 06-1752-cr (notes filing of "show cause order" without mention of the default, and incorrectly states that October 2008 order stated that "a brief was never filed").

In light of the significant errors in Einhorn's declaration discussed above, we decline to examine his remaining contentions, which we leave for the Committee.

---

[2] The Committee in the first instance should determine the extent to which Einhorn's conduct in *United States v. Jones (Nunley)*, 03-1276-cr, and *United States v. Frankel*, 06-1752-cr, should be considered in its proceedings, in light of the panels' decisions in those cases not to sanction him.

## IV. Possible Good Cause for Defaults and Mitigating Factors

Einhorn's declaration contains factual assertions which might support a finding of good cause for some of his defaults. However, the conclusory nature of most of his case descriptions, his insistence that no defaults occurred, and the misleading information he presents as to some cases leaves us unable to reach a conclusion as to whether he has any valid excuse or explanation for his conduct, or whether any mitigating factors exist. Moreover, while Einhorn's presentation of incomplete or misleading information may have been inadvertent, it nonetheless reflects poorly on his ability to abide by, and properly respond to, this Court's rules and orders. However, we do note that Einhorn has not defaulted on any appeal in this Court since the filing of our October 2008 order. *See United States v. DeJesus*, 08-6096-cr; *United States v. Herndon*, 09-0311-cr; *United States v. Castillo*, 09-0758-cr.

Upon due consideration of the matters described above, it is ORDERED that Jonathan Einhorn is hereby referred to this Court's Committee on Admissions and Grievances for investigation and preparation of a report consistent with Federal Rule of Appellate Procedure 46, this Court's Local Rule 46(h), and the Committee's Rules. The Committee is authorized to share information, and/or hold joint proceedings, with other disciplinary committees, as long as confidentiality is maintained.

In conjunction with this referral, the Court is providing the Committee with a number of documents, including docket sheets that are labeled as "Non-Public Dockets." The non-public docket sheets are internal Court documents that differ in various respects from the docket sheets available to the public. While the Committee is free to make use of the non-public docket sheets, and to provide Einhorn with copies to aid in his defense, we note that the docket sheets, and their contents, are to be treated as confidential by all persons who require access to them.

## V. Request Addressed to State and District Court Grievance Committees

It is further ORDERED that copies of this order also be served on the grievance committee for the United States District Court for the District of Connecticut and the Statewide Grievance Committee for the State of Connecticut Judicial Branch, which may have an interest in, or information relevant to, the present matter. We request that, to the extent permitted by the relevant rules and statutes, those grievance committees provide this

11

Court's Committee on Admissions and Grievances with all such relevant information, including complaints filed against Einhorn, responses submitted by Einhorn, transcripts of any proceedings, recommendations concerning dispositions, and dispositive orders. In sum, we ask for all pertinent information, whether public or private, and authorize counsel to this panel and representatives of this Court's Committee to make any further arrangements that may be necessary. We ask that any such information be delivered directly to this Court's Committee at [address omitted].

Finally, we request that all recipients of the present order treat it as confidential.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

By:_____/s/_____
        Michael Zachary
        Counsel to the Grievance Panel

APPENDIX 3

## August 2010 Report of the Committee on Admissions and Grievances

## REPORT & RECOMMENDATION
### In re Jonathan Einhorn, No. 08-90123-am

### I.  Introduction

By Order dated July 7, 2009, the United States Court of Appeals for the Second Circuit (the "Court") referred Jonathan Einhorn to the Committee on Admissions and Grievances (the "Committee") for investigation and the preparation of a report regarding possible disciplinary or other corrective measures.1 *See* Second Circuit Local Rule 46(h).

The July 7, 2009 Order raises concerns with respect to numerous cases in which Mr. Einhorn defaulted. Several of those defaults resulted in dismissals, while many others required Court personnel to issue repeated warnings of the expiration of previously-extended deadlines. At least two defaults resulted in orders to show cause as to why Mr. Einhorn should not have been sanctioned.

Based on the testimony adduced at the hearing and the other documentary evidence, the Committee recommends that Einhorn be publicly reprimanded for his conduct. The following constitutes the Committee's report and recommendation to impose discipline on Einhorn.

---

1 On October 29, 2008, the Circuit issued an Order to Show Cause as to "Why Disciplinary or Other Corrective Measures Should Not Be Imposed." In its Order, the Court expressed concern that Attorney Einhorn had failed to comply with Court orders and rules. Einhorn's response to the Circuit's Order, dated November 18, 2008, denied the specific allegations of default noted by the Circuit. Thus, the Circuit referred the matter to the Committee for investigation.

1

23257878v1

## II. Procedural Background

On August 4, 2009, this Committee issued an Order to Show Cause regarding Einhorn's conduct as alleged in the Court's referral order and giving notice of a hearing. Mr. Einhorn submitted a written response, dated October 1, 2009, and a supplemental response, dated January 19, 2010, both of which the Committee has reviewed. At the request of Mr. Einhorn, the Committee extended the original hearing date to April 6, 2010.

The hearing held on April 6, 2010 was conducted by Committee members the Hon. Howard Levine, Paul Curnin, and James Glasser. William F. Dow III, Esq. of New Haven, Connecticut appeared on behalf of Mr. Einhorn. No witnesses were present.

At the close of the hearing, Mr. Dow notified the Committee that he would communicate his intent with respect to the filing of a post-hearing submission within five business days. No additional response was filed.

## III. Factual Background

The following facts are taken from Court records, the respondents' submissions, and the testimony of April 6, 2010.

After graduating from University of Connecticut School of Law in 1973, Mr. Einhorn was admitted to the District Court in the State of Connecticut in 1974. He was admitted to the Second Circuit Court of Appeals in 1976 and to the United States Supreme Court in 1979. Mr. Einhorn is a sole practitioner. His practice consists predominantly of criminal work, and he assumes several cases a year through the CJA referral process. Mr. Einhorn has never been disciplined by any Court or Committee, is in good standing with all bars of which he is a member, and has never been the subject of a grievance filed against him in the District Court or the Court of Appeals.

The subject of the Referral Order and the investigation by this Committee was the frequency of Einhorn's missed deadlines or "defaults" in cases before the Circuit and his initial written response to the Court's October 29, 2008 Order to Show Cause in which he denied any of the instances of default raised by the Circuit. He appeared to be under the mistaken belief that a "default" involved a formal entry made by the Court. To the contrary, as explained in the Circuit's Referral Order, a default occurs when an attorney fails to file a document by the deadline specified in an order or rule of the Court, and no formal entry on the docket is required. During the testimony he provided at the April 6th hearing, Mr. Einhorn admitted his misunderstanding and apologized to the Committee for denying the instances raised by the Circuit. He did not contest any of the facts detailed by the Circuit. We found Mr. Einhorn credible.

## IV. Legal Standard

2

23257878v1

The Rules of the Committee on Admissions and Grievances for the United States Court of Appeals for the Second Circuit provide:

> An attorney may be subject to discipline or other corrective measures for any act or omission that violates the rules of professional conduct or responsibility of the state or other jurisdiction where the attorney maintains his or her principal office. . . . An attorney also may be subject to discipline or other corrective measures for any failure to comply with a Federal Rule of Appellate Procedure, a Local rule of the Court, an order or other instruction of the Court, or a rule of professional conduct or responsibility of the Court, or any other unbecoming a member of the bar.

Committee Rule 4; *see also* Fed. R. App. R. App. P. 46(c) ("[A] court of appeals may discipline an attorney who practices before it for conduct unbecoming a member of the bar or for failure to comply with any court rule."). "Conduct unbecoming a member of the bar" includes "conduct contrary to professional standards that show an unfitness to discharge continuing obligations to clients or the courts, or conduct inimical to the administration of justice. More specific guidance is provided by case law, applicable court rules, and 'the lore of the profession,' as embodied in codes of professional conduct." *In re Snyder*, 472 U.S. 634, 645 (1985).

Because Mr. Einhorn was a member of the bar of Connecticut during the time period at issue, the Connecticut Rules of Professional Conduct (the "Rules") also apply. Two sections are of particular relevance in this matter. First, the Rules state that a lawyer "shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation." *See* CT Rules of Prof'l Conduct R. 1.1. Second, a lawyer "shall act with reasonable diligence and promptness in representing a client." *See* CT Rules of Prof'l Conduct R. 1.3. Courts have consistently treated neglect of client matters and ineffective or incompetent representation as sanctionable conduct. *See, e.g., Gadda v. Ashcroft*, 377 F.3d 934, 940 (9th Cir. 2004), *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 133 (2d Cir. 2004), *Matter of Rabinowitz*, 596 N.Y.S.2d 398, 402 (N.Y. App. Div. 1993), *United States v. Song*, 902 F.2d 609 (7th Cir. 1990), *Matter of Kraft*, 543 N.Y.S.2d 449 (N.Y. App. Div. 1989), *In re Bithoney*, 486 F.2d 319 (1st Cir. 1973).

Such conduct is also sanctionable under the applicable professional rules and standards. The American Bar Association's Standards for Imposing Lawyer Sanctions call for a range of sanctions from reprimand to disbarment for various forms of "lack of diligence" and "lack of competence." ABA Standards §§ 4.4, 4.5.

"Any finding that an attorney has engaged in misconduct or is otherwise subject to corrective measures must be supported by clear and convincing evidence." Rules of the

3

Committee on Admissions and Grievances, Rule 7(h). Once misconduct has been established, in determining the sanction to be imposed, we should generally consider: (a) the duty violated; (b) the lawyer's mental state; (c) the actual or potential injury caused by the lawyer's misconduct; and (d) the existence of aggravating or mitigating factors. *See* ABA Standards § 3.0. This Committee may recommend to the Court's Grievance Panel a range of sanctions, including disbarment, suspension, public or private reprimand, monetary sanction, removal from *pro bono* or Criminal Justice Act panels, referral to other disciplinary bodies, supervision by a special master, counseling or treatment, or "such other disciplinary or corrective measures as the circumstances may warrant." Rules of the Committee on Admissions and Grievances, Rule 6.

## V.    The Alleged Misconduct

The Court's July 7, 2009 Order raised concerns about the functioning of Einhorn's practice and his frequent failure to meet deadlines. According to the referral order, at least four[2] of Mr. Einhorn's cases were dismissed due to his repeated failure to timely file briefs or other documents with the Court, sometimes after requesting and being granted extensions of time. The four cases in which Einhorn''s failure to timely file briefs resulted in dismissal were *United States v. Tate*, 06-4460-r; *United States v. Artis*, 04-4330-cr; *United States v. Cartelli*, 05-1294-cr; and *United States v. Jones (Nunley)*, 03-1276-cr. In *Tate* and *Cartelli*, the dismissals followed several extensions and subsequent failures by Einhorn to comply with prior briefing orders. In *Nunley*, Einhorn mistakenly believed he had been relieved by the Court in August 2005. However, this explanation does not comport with Einhorn's requests for extensions of time, which were granted, in 2006. Each of these cases was later reinstated upon motions, and Einhorn did eventually file briefs in all four cases.

In addition to the four cases that were dismissed, Einhorn defaulted in 10 additional cases before the Circuit: *United States v. Yandow*, 04-1152-cr; *Brown v. Area Cooperative*, 03-7265-cr; *United States v. Brewer (Thompson)*, 04-2936-cr; *United States v. 32 Medley Lane*, 05-2969-cv; *United States v. Torres*, 05-0709-cr; *United States v. Reed*, 04-3899-cr; *United States v. Alejandro*, 02-1538-cr; *United States v. Luna*, 07-3018-cr; *United States v. Riccitelli*, 05-2735-cr; and *United States v. Frankel*, 06-1752-cr. Many of these instances of default followed several extensions and notifications by Court personnel that he missed filing deadlines. The Order also raised concern over Einhorn's initial response to the Circuit's Order to Show Cause, in which Einhorn mistakenly denied any instance of default. Other than his numerous defaults, the Court's referral order alleged no further misconduct on Einhorn's part, and this Committee is not aware of any other potential misconduct.

### A.    *The Duty Violated*

---

2 The October 2008 Order attributed a fifth default dismissal to Einhorn in *Community Television v. Caruso*, 00-9117-cv. As the Court notes in its Referral Order, this allegation was erroneously attributed to Einhorn, since the dismissal actually occurred six days before he filed his notice of appearance in the case.

4

Einhorn does not contest the facts set out in the Court's referral order, and they are consistent with the Committee's independent review of the dockets. Einhorn concedes that his conduct was wrong and failed to meet professional standards. The Committee independently finds that there is clear and convincing evidence that his conduct violated disciplinary rules, court orders and professional standards, including his duties of diligence and competence, *see* ABA Standards for Imposing Lawyer Sanctions §§ 4.4, 4.5, and his duty to act diligently and not to neglect legal matters entrusted to him, *see* CT Rules of Prof'l Conduct R. 1.1, 1.3, and that his conduct was "unbecoming a member of the bar," Fed. R. App. P. 46(c), and "inimical to the administration of justice," *In re Snyder*, 472 U.S. at 645.

## B. *The Lawyer's Mental State*

Einhorn admitted full responsibility for his filing errors. He explained that the pattern of late filings began with what he believed to be an initial acceptance of a late submission by the Court. Thereafter, Mr. Einhorn habitually filed briefs and other Court documents past the filing deadline, never intending harm to his clients or disrespect to the Court.

Einhorn also expressed deep remorse for his initial response to the Circuit's Order to Show Cause, in which he mistakenly denied any instance of his default. *See* Hearing Transcript at 6-10. He explained that he never intended to mislead the Court and now fully understands the nature of his misconduct. He even conceded that his conduct warrants some form of sanction. At his hearing, Einhorn testified, "I know certainly I deserve some sanction for my conduct. And I'm an adult and ready to take it, but I would like to continue before the Second Circuit." Hearing Transcript at 10.

## C. *Actual or Potential Injury*

Einhorn guaranteed that none of his clients suffered any prejudice due to his mistakes and assured the Committee that he would lighten his caseload so that he could ensure competence going forward. He explained, "No harm was done to any client. Every brief that was supposed to be filed was filed. It was filed; some out of time. There were some dates missed." Hearing Transcript at 4. After a careful review of the record, the Committee concurs with Einhorn's assurance that his clients suffered no actual injury. In each of the cases where dismissals were ordered, the appeals were reinstated by motion and briefs were duly filed.

## D. *Mitigating Factors*

There are no aggravating factors here. However, several mitigating factors are present. Einhorn's conduct is significantly mitigated by his evident remorse, and by his apparent lack of a selfish motive. ABA Standards § 9.32 (b), (l). In addition, Einhorn does great service to the District Court in Connecticut and indigent defendants by assuming a great number of *pro bono* matters. In addition, he was appointed a Special Master in the United States District Court in Connecticut in a number of cases and even received a certificate of appreciation in recognition of his service as a Settlement Special Master. His conduct is also mitigated to a substantial degree

5

by the efforts he has made to improve his practice, which is made up chiefly of criminal cases. Indeed, Einhorn explained to the Committee that he no longer takes CJA appeal-only cases and limits his CJA appeals to those he has handled at the trial level. He also explained that he recently adopted a new three-tier calendaring system in his office, pursuant to which his paralegal records deadlines in three separate and distinct places with reminders set well in advance of upcoming deadlines. Due to these genuine efforts to correct his previous errors, Einhorn has not defaulted in any case since the Court's 2008 Order to Show Cause. Finally, Mr. Einhorn's conduct is mitigated by his apparent good-faith willingness to cooperate with the Committee and with the Court. ABA Standards § 9.32 (e).

## VII.  Recommendation

Upon clear and convincing evidence, the Committee finds that disciplinary action is warranted in this case based on "conduct unbecoming a member of the bar." Fed. R. App. P. 46(c). Under the circumstances, the Committee recommends that Mr. Einhorn be publicly reprimanded for his failures as set forth herein.

Respectfully Submitted,

*Tony J. White /Fx*

Member of the Committee
August 31, 2010

23257878v1